# Sandlin *v.* Anderson, Green & Co.

### *Statutory Trial of Right of Property.*

1. *Execution on justice's judgment; by whom issued, to whom addressed, and by whom levied.*—An execution on a judgment rendered by a justice of the peace, issued by another justice, is not void on that account; nor because it was addressed "to the sheriff of said county," and was levied by him.

2. *Evidence of former executions.*—On the trial of a statutory claim suit, the former executions issued on the plaintiff's judgment, which were not levied on the property in controversy, may not be necessary evidence in his favor, but their admission as evidence can not injure the claimant.

3. *Retention of possession by mortgagor, as badge of fraud.*—On the trial of a statutory claim suit, between plaintiffs in execution against the mortgagor, and the mortgagee as claimant; the property having been levied on before the law-day, while it was in the possession of the mortgagor, and being left in his possession by the claimant after the interposition of his claim; such retention of possession by the mortgagor does not justify any inference of fraud.

4. *Receipt by mortgagor of value of property lost, as badge of fraud.* One of the mules conveyed by the mortgage having been negligently killed by a third person, while thus left by the claimant in the possession of the mortgagor, and its value paid to him by the wrong-doer; such payment and receipt, not shown to have been made with the knowledge of the mortgagee and claimant, can not be regarded as a badge of fraud in the mortgage.

APPEAL from the Circuit Court of Cullman.

Tried before the Hon. JAMES AIKEN.

This was a statutory trial of the right of property in and to two mules, a buggy and harness, between Anderson, Green & Co., plaintiffs in execution against William Conant, and Daniel Sandlin as claimant; and on the death of said claimant, the suit was revived in favor of his administrators, who are the appellants. The plaintiffs' judgment is not set out in the record, but the execution which was levied on the property recited that they "recovered judgment before B. F. Still, on the 7th August, 1880, for one hundred dollars, besides five dollars costs." The execution was signed by

"*A. R. S. Speegle, J. P.*," and seems·to have been dated· on the 28th May, 1881, but the name of the month was erased; was directed to "the sheriff of said county," whose return stated that it was received on the 2d June, 1881; and was levied by his deputy, on the 14th June, 1881, on the property here in controversy. On the trial, the claimants objected to the admission of this execution as evidence, when offered by the plaintiffs, "because it is addressed to the sheriff of said county, and because it purports to be issued on a judgment before B. F. Still, and because it is not dated;" and they excepted to the overruling of their objections. The plaintiffs offered in evidence, also, "three or more other executions, similar to the execution above set out in address, signature and contents, issued in the year 1881, prior to the 28th May, none of which was levied on the property in controversy, or any part thereof." The claimants objected to the admission of these executions as evidence, "because immaterial and irrelevant, and because they were addressed to the sheriff, and because issued on a judgment before said Still;" and they excepted to the overruling of their several objections.

The deputy sheriff who made the levy testified, on behalf of the plaintiffs, "that at the time of the levy the property levied on was in the possession of said William Conant, who claimed it as his own, but said that it was under a mortgage to claimants' intestate." The claimants asserted title under a mortgage executed by said Conant to said Daniel Sandlin, which was executed on the 23d February, 1881; and they offered said mortgage in evidence, in connection with proof of its execution, registration, and consideration. The debt secured by the mortgage was due and payable on the 25th December, 1881, and the mortgagee was authorized, on default being made, to take possession of the property and sell it; "but it gave no authority to him to take possession of the property until the law-day." The plaintiffs offered evidence tending to impeach the validity of this mortgage, and proved, among other things, that said Conant had continued in the possession of the property pending the suit; that one of the mules was wrongfully killed by one Von Werdt, who thereupon paid said Conant its value ($85), taking his receipt, which was produced; that the other mule afterwards died, and the buggy and harness were worn out while yet in his possession. The claimants objected and excepted to the admission of this receipt as evidence. "There was no evidence that the claimants had any knowledge of the payment or receipt of said money until long afterwards, or that they ever

assented thereto in any manner; and it was proved that said Daniel Sandlin died before March, 1883, when said money was paid and received." The claimants offered, also, in this connection, evidence that Conant retained the possession of the property during the suit, under an agreement with them and their intestate, as quoted in the opinion of the court.

On request of the plaintiffs, in writing, the court gave the following (with other) charges to the jury: "(3.) If the jury believe, from the evidence, that Conant retained the possession of the property after the law-day of the mortgage, for an unreasonable length of time, then such retention became a badge of fraud, to which the jury may look, in connection with all the evidence, in determining whether said mortgage was fraudulent." "(6.) The retention of the possession by the mortgagor of personal property, when prolonged an unreasonable length of time after the day of default, becomes a badge of fraud." The 8th charge given is thus copied in the transcript: "(8.) The court charges the jury, that if they believe from the evidence that the claimant permitted Conant, the mortgagor, to remain in possession of the property described in the mortgage after the execution of the claim bond, and after the mortgage was due and payable, and continued in possession of a part of the property until this trial and the remainder of the property; and the collection by Conant from Von Werdt of the price of the mule killed; and that said possession of said property was permitted by claimant to said Conant for an unreasonable length of time; then this is a badge of fraud to which the jury may look, in connection with all the other evidence in the cause, in determining whether said mortgage was fraudulent."

The claimants duly excepted to each of these charges, and they here assign said charges as error, together with the other rulings to which, as above stated, they reserved exceptions.

GEO. H. PARKER, and HAMILL & LUSK, for appellant.

W. L. COFER, contra.

STONE, C. J.—1. "The sheriff is authorized to execute all mesne and final process which is required of constables," etc.—Code of 1876, § 731. The execution in this case was not void. –2 Brick. Dig. 480, § 71.

2. Proof of former executions issued on the same judg-

ment, may have been unnecessary, but it could not possibly have done the claimant any harm.

3. Conant was the defendant in execution, and the appellants in this case were the claimants. Claimants were mortgagees under a mortgage dated February, 1881, and due in December, 1881. The levy and claim were between these dates, and before the law-day of the mortgage. Conant, the mortgagor, was in possession when the levy was made, and he was allowed to retain possession of the property pending the litigation. The bill of exceptions contains the following recital: "Claimants offered evidence tending to show that, under an arrangement made with deceased (Sandlin) in his life-time, and renewed by claimants as his administrators, since his death, with said Conant, said property was left with said Conant to hold until this litigation ended; the deceased and claimants not desiring the trouble and expense of taking care of and keeping said property while this litigation lasted." As we understand the record, this testimony was given to the jury.

Interposing claim under the statute does not destroy or impair the lien created by a levy. It only suspends the right of sale pending the litigation. If the claim is successfully maintained, the lien is destroyed. If it fails, the claimant and his sureties must restore the property to the levying officer, or pay its assessed value. Pending the claim suit, it would be very hazardous in the mortgagee or claimant to make a sale, and no presumption can be indulged against him for not doing so.—*Munter v. Leinkauff*, 78 Ala. 548. We find nothing censurable, or suspicious, in the simple fact that the property levied on was left with Conant for safe custody. Such custody, so far as plaintiff in execution is concerned, must be treated as that of the claimant, Sandlin.

Under the principle stated above, charge 3 asked by plaintiffs should not have been given; and charge 6, although correct as a general proposition of law, was misleading in this case.

4. While the claim suit was pending, and while the property was in the possession of Conant, one of the mules in controversy was killed by a person not a party to the record, and the value of it was paid to, and received by Conant, who gave to the offender, Von Werdt, a receipt for the money so paid. The statement of the bill of exceptions relating to this transaction is as follows: "There was no evidence that claimants had any knowledge of Conant getting said money from said Von Werdt, or giving said receipt, until long afterwards, or that they ever in any manner as-

sented thereto." We can not perceive how this transaction should operate against the claimants, in the inquiry of fraud *vel non* in the execution of Conant's mortgage. It could only become important in the event the property is found subject to the execution, in determining the extent of Sandlin's liability to deliver the property. Even that would seem to be immaterial, as Conant was Sandlin's bailee, and the latter was liable to the same extent as if he had himself made the collection from Von Werdt. Charge 8 was improperly given, because we can not perceive it was a badge of fraud.

Reversed and remanded.